IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:11CV400-MOC-DSC

| | |
|---|---|
| JANET WHITE, )<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>Defendant. )<br>) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the Court on the pro se Plaintiff's "Motion for Summary Judgment" (document #13) filed January 1, 2012, and Defendant's "Motion for Summary Judgment" (document #18) and "Memorandum in Support..." (document #10) filed March 19, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

Plaintiff filed her application for Supplemental Security Income ("SSI") on April 23, 2008, alleging that she became disabled on November 1, 2006. Plaintiff's application was denied initially

---

[1] Pursuant to the Pretrial Scheduling Order, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Local Civil Rule 7.1 (E) which clarifies that the briefing schedule provided under Rule 7.1 does not apply in Social Security appeals.

and on reconsideration. A hearing was held on November 20, 2009.

On March 22, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.8-21). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered from emphysema, depressive disorder, and borderline intellectual functioning, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 14). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform unskilled[3] light[4] work that involved completion of only simple, routine, repetitive tasks with only occasional production goals, public contact, stress, and exposure to fumes. (Tr. 18). The ALJ also found that Plaintiff could not perform any of her past relevant work. (Tr. 19). The ALJ ultimately concluded that based on testimony from a vocational expert ("V.E."), there were other jobs in the national economy that Plaintiff could perform ( including cashier, bench assembler - clean area, and medical and surgical supplies assembler) and that she was not disabled. (Tr. 19-20).

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3]Unskilled work is defined by regulation as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

[4]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

By notice dated June 24, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on August 19, 2011. In her two-page Motion, Plaintiff generally asserts that she is disabled due to emphysema, depression, and ulcers in her throat and stomach. See Document #13 at 1-2. The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. This is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. **DISCUSSION OF CLAIM**

The question before the ALJ was whether Plaintiff became "disabled" at any time, as that term of art is defined for Social Security purposes.[5] The ALJ found that Plaintiff's emphysema and depressive disorder were severe impairments (Tr. 14), and limited her RFC to unskilled work that involved the completion of only simple, routine, repetitive tasks with only occasional production goals, public contact, stress, and exposure to fumes. (Tr. 18). The V.E. concluded that even with those restrictions, there were jobs that Plaintiff could perform in the national economy, including cashier, bench assembler - clean area, and medical and surgical supplies assembler. (Tr. 41-42). Based on that testimony, the ALJ determined that Plaintiff was not disabled. (Tr. 19-20). In her Disability Report - Adult (Tr. 119) and Disability Report - Appeal (Tr. 135-137, 169-171), Plaintiff did not identify the conditions related to her throat and stomach ulcers. She did not testify about

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

those alleged impairments at the administrative hearing. (Tr. 28-39). The evidence in the record fails to support a finding that Plaintiff's functioning was restricted due to ulcers. (Tr. 183-301).

The ALJ considered the medical records from all of the providers who examined Plaintiff, including Dr. Campbell, Dr. Gleditsch, and Nurse Practitioner Peniston from CMC Behavioral Health Center; Dr. Svecharnik from Costwald Family Medicine; the three consultative examiners, Drs. Adekanmbi, Abramowitz, and Hillman; and the state agency physicians. (Tr. 12-18). Based on their objective findings, the ALJ concluded that Plaintiff could perform a range of light work. (Tr. 18). The medical record establishes that Plaintiff's emphysema and depression do not cause any greater limitations than those found by the ALJ.

With respect to Plaintiff's emphysema, she presented to the hospital on April 1, 2008 with fever, vomiting, diarrhea, and abdominal pain. The attending physician concluded that her respirations were not labored, her breath sounds were within normal limits, her chest x-ray was normal with no evidence of active cardiopulmonary disease, and on discharge her oxygen saturation rate was at ninety-nine percent. (Tr. 183-186). On June 26, 2008, Dr. Adekanmbi found that Plaintiff had decreased air entry bilaterally with expiratory rhonchi. She was in no acute cardiopulmonary distress, and her pulmonary function assessment indicated only moderate restrictions. (Tr. 198, 203-204). On September 24, 2008, Dr. Hillman observed that Plaintiff had decreased air entry bilaterally, but was not experiencing any rales, rhonchi, or wheezing. (Tr. 230). In March 2009, Dr. Svecharnik determined that Plaintiff was wheezing diffusely, but her respiratory effort was normal. (Tr. 277, 279).

As for Plaintiff's depression, the medical reports from her providers at CMC Behavioral Health Center support the ALJ's decision. On August 22, 2008, Dr. Campbell observed that

Plaintiff was alert and oriented, her cognition was intact, her speech was relevant, there was no evidence of thought disorder, she did not appear to be hallucinating or expressing psychotic thought content, her insight and judgment were intact, she was not suicidal, and her Global Assessment of Functioning ("GAF") score was 55.[6] (Tr. 266).

Two months later, Dr. Gleditsch determined that Plaintiff was alert and oriented to four spheres, her affect was full and appropriate, her mood had improved, her thought content was appropriate, her thought processes were coherent, logical, and goal directed, her perceptual ability and memory were intact, her insight was fair, her speech, judgment, attention, and concentration were normal, and her GAF score was 60. (Tr. 272).

On January 15, 2009, Ms. Peniston noted that Plaintiff had not filled her prescription for Remeron, and reported that her Celexa was not working. (Tr. 268). She also concluded that while Plaintiff's insight and judgment were limited, her thoughts were logical and goal-oriented, her speech was normal, she was alert and oriented to four spheres, her insight and judgment were intact, her concentration was fair, she denied suicidal ideation and was not psychotic, and her GAF score was 57. (Tr. 268). On May 22, 2009, Ms. Peniston further noted that Plaintiff had missed several doses of Celexa, and could not report how often she was taking the medication. (Tr. 293). Ms. Peniston went on to find that although Plaintiff's mood was reported as depressed, her affect was irritable, her insight and judgment were limited, her concentration was poor, and her thoughts were concrete; her speech was normal, she was alert and oriented to four spheres, she denied suicidal ideation or any psychotic symptoms, and her GAF score was 55. (Tr. 293). Ms. Peniston noted on

---

[6] A GAF score between 51 and 60 denotes moderate or nondisabling symptoms or difficulties in social or occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders - Text Revision* 34 (4th ed. 2000).

October 9, 2009 that Plaintiff had been out of medication for approximately six weeks. (Tr. 289). On examination, she observed that while Plaintiff reported a depressed mood with congruent affect, her insight and judgment were limited, and her thoughts were concrete; her speech was normal, she was alert and oriented to four spheres, her concentration was fair, she denied suicidal ideation or any psychotic symptoms, her fund of knowledge and memory appeared grossly intact, and her GAF score was 55. (Tr. 289).

The other medical evidence in the record also supports the ALJ's findings regarding Plaintiff's mental status. On August 26, 2008, Dr. Abramowitz observed that Plaintiff's eye contact was good, she was able to follow simple instructions, her speech was relevant, her verbal skills were good, there was no evidence of suicidal ideation, hallucinations, or delusions, she was oriented to three spheres, she knew the last two Presidents and places in and around Charlotte, and her knowledge of current events and judgment were good. (Tr. 224-225). The doctor added that during testing Plaintiff was able to understand, retain, and follow instructions, and she had no difficulty concentrating or attending to tasks. (Tr. 226). Dr. Adekanmbi and Dr. Hillman also found that Plaintiff was alert and oriented to three spheres, and her cognition was intact and normal. (Tr. 204, 231). On March 18, 2009, Dr. Svecharnik concluded that Plaintiff's psychiatric examination was normal (Tr. 277). On March 23, 2009, she was oriented to three spheres, and her judgment and recent and remote memory were normal (Tr. 281). On November 18, 2009, her judgment, orientation, and memory were normal with no suicidal ideation. (Tr. 300). Lastly, the state agency physician who reviewed Plaintiff's medical records determined that she was capable of performing simple, routine, repetitive tasks in a setting with low to medium production requirements. (Tr. 248).

Although Plaintiff does not mention her borderline intellectual functioning on appeal, out of an abundance of caution, the Commissioner addressed this impairment in his brief. The ALJ's

7

determination here is also supported by substantial evidence. The ALJ concluded that Plaintiff suffered from borderline intellectual functioning rather than disabling mental retardation as defined by Listing Section 12.05C. The ALJ found that while Plaintiff's recent IQ scores fell within the range specified by the listing, there was no definitive diagnosis of mild mental retardation, and her other medical records did not establish the deficits in intellectual functioning that would be expected with mild mental retardation. (Tr. 14). The ALJ further noted that he was not persuaded that Plaintiff had deficits in adaptive functioning, since she had functioned independently for decades, maintained a household, raised children, and held jobs. (Tr. 14). The ALJ ultimately concluded that Plaintiff's ability to perform a range of activities over a span of many years was inconsistent with a finding that she had deficits in adaptive functioning. (Tr. 14)[7]. See Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012) ("an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record.") ; see also Clark v. Apfel, 141 F.3d 1253, 1256 (8th Cir 1998); Muse v. Sullivan, 925 F.2d 785, 789-90 (5th Cir. 1991); Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (all holding that the Commissioner is not required to accept an individual's IQ score as conclusive evidence of her level of intellectual functioning where such scores are inconsistent with other evidence in the record).

Although the medical records establish that Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly

---

[7]Plaintiff stated in her Function Report that she was able to attend to her personal care, feed her cats, wash dishes, straighten her house, make beds, do laundry, sweep, vacuum, mop, prepare meals, and go shopping. (Tr. 126-129, 145-147). Plaintiff added that she spent time socializing with others during the week, could pay attention all day and follow spoken and written instructions, and that the only reason she was unable to manage money was that she had no income. (Tr. 129-131, 147, 149).

support the ultimate conclusion that Plaintiff suffered from her combination of impairments, but was not disabled.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #18) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: March 19, 2012

David S. Cayer
United States Magistrate Judge